Carr, J.
This case comes before us upon a demurrer to evidence. My general view of the practice with respect to such demurrers, has been given in the case of Green v. Judith, to which I refer. In the case before us, the evidence is all on the side of the plaintiff, and we are to say whether it makes such a case as would authorize a jury, by fair inference, to say that the slaves for which this action was brought, are the property of the plaintiff? (Here the judge stated the substance of the evidence, and then proceeded). In my mind the natural, fair, and, I might say, necessary inference from the evidence is, that Hansbrough sold these slaves to Thom; and the order to the overseer was such a transfer and delivery, as passed the property, and enabled him to maintain detinue for them. That it was a sale, the whole course of the transaction seems to shew: Hansbrough said nothing about giving Thom the slaves: and if it had not been for the relative situation of the parties, and the wealth of Hansbrough, such an idea could never have arisen. He told one witness, that he meant to sell slaves to Thom; and to others he said, he had made or was making arrangements for letting him have slaves &c. What arrangements could be necessary if he meant to give them ? Finally, the order itself imports a sale: “ you will shew and deliver &c.” Why shew them, if Thom was a donee merely ? That such an order upon a sale is a transfer of the property, was decided by this court in Pleasants v. Pendleton, 6 Rand. 473. and many cases there cited to shew that it is settled law. I am well satisfied, therefore, that upon this record the plaintiff has a good title to the slaves, and that the judgment must be affirmed.
*155 Cabell, J.
I cannot perceive that any inconvenience arises, from the practice in this country, of compelling a joinder in demurrer, without a formal admission on the record, on the part of the demurrant, of all the inferences of fact which the court may conceive to be fairly deducible from the evidence demurred to. On the contrary, I think our practice is better calculated to effect the purposes of justice, than the practice, said to prevail in England, of compelling the demurrant to make the admissions, before the opposite party is compelled to join in the demurrer. It is the court, according to both practices, that is to determine on the inferences which are fairly deducible from the evidence, and the court can, certainly, perform this function much more correctly, on grave consideration, on the final argument of the demurrer, than in the hurry and bustle of a jury trial. Nor is it any objection to a demurrer to evidence, that the evidence is circumstantial, and even complicated ; as will clearly appear from the case of Stephens v. White. In the case before us, the evidence, circumstantial in its nature, was all offered by the plaintiff, and was free from contradiction. If the defendant chose to risk a demurrer I can perceive nothing in the case, to deprive him of the right to do so. Sales and gifts need not be positively proved. They may be inferred from circumstances. And the defendants here, in admitting by their demurrer, the truth of all the facts positively proved by the plaintiff’s witnesses, necessarily left with the court the right to infer from those facts, whatever the jury might have fairly and reasonably inferred from them.
The real question before us is, whether we are to infer a sale or a gift ? It seems to be admitted, that the one or the other may be fairly inferred. And I will here take occasion to say, that a demurrer admits only those things which may be fairly inferred.—I am decidedly of opinion, that the just and fair inference from the testimony, is that Hansbrough sold the slaves to Thom, and that he did not give them. It is true, that he regarded Thom with eyes of *156 favour, and that his obiect was to aid him in paying for the land which he had bought. But a gift was not the only mobe by which that object could be accomplished. Aid might be extended by a sale of slaves, which Thom could readily apply towards discharging his debt; the vendor Hansbrough consenting to take a very low price, or even a full price, on long time of payment. It is in express proof that Hansbrough said, two, three, or six months before the transaction took place, that he intended to sell Thom a parcel of his negroes, and wait with him for the purchase money; and that Thom might apply them to the discharge of his debt. And the testimony exhibits him to the last moment, as engaged in negotiations and arrangements, in relation to these negroes, to which he regarded the concurrence of Thom as necessary. All this is intirely consistent with the idea of a sale, but is utterly incompatible with the idea of a loan or gift. The order, therefore, given to Thom for the slaves, proves, when taken in connexion with the other testimony, a sale and not a gift. I think the judgement should be affirmed.
Brooke, J. concurred.
Tucker, P.
Upon the trial of this cause in the circuit court, the defendants by their counsel tendered a demurrer to evidence, which was joined by the counsel for the plaintiff. He objected, it is true, to the court’s permitting the defendants to demur; but this seems to have been because it was allowed after some progress had been made in the cause before the jury; an objection which according to the case of Hoyle v. Young, 1 Wash. 150. was not tenable. It is not distinctly asserted, that he was compelled to join in the demurrer, and may therefore be considered as having voluntarily done so.
Upon this demurrer to evidence, nothing appears but the evidence produced by the plaintiff to support the issue joined on his part; and the case is, therefore, freed from *157 the embarrassment which has arisen, and may often arise, . . where a variety of testimony is introduced on both sides, and all inserted in the demurrer, in pursuance of our settled _ i i • i • t practice in Virginia. But, though the case is disembarrassed in this regard, it is not without its difficulties, arising out of the exceedingly remote inferences, which it is proposed to draw from the matters set forth in the demurrer. The discussion has given rise to renewed remarks upon the difference between the english practice and ours, on demurrers to evidence; a subject fully discussed in Green v. Judith, Whittington v. Christian, and other cases. The practice with us is assailed, both as inconvenient, and as trenching upon the unquestioned privilege of the party, to have the facts of his case determined by the jury, instead of their being submitted to the decision of the court. Without meaning to bring these matters into serious discussion, or to compare the relative conveniences of the two modes of proceeding, I shall avail myself of the occasion to make one or two observations.
In the first place, I will remark, that I perceive no essential difference between the english practice and ours, as to the privilege of jury trial. By the former, it is required that the demurrant shall admit every fact, which the evidence of his adversary conduces to prove; Gibson v. Hunter, 2 H. Black. 207. Who is to decide what facts the evidence thus conduces to prove? Not the jury, assuredly, but the court. Id. 209. So with us : the demurrant being held to admit all that the jury could reasonably infer against him from the evidence, and to waive all his own testimony which contradicts that offered against him, and all objections to the credit of the testimony demurred to, the court rio more passes upon the credit or the weight of evidence here, than in the english courts. The only difference is, that in England, according to what is said in the cases, the facts which the evidence conduces to prove, are ascertained by the court at the time of the demurrer, and spread upon the record, and thus distinctly admitted by the demurrant; whereas, in *158 Virginia, those facts are ascertained by the court at the time of the argument of the demurrer, as fairly inferrible from the testimony of the party, the verity of which his adversary is not permitted to question. Whether the one or the other course is most convenient, seems to be a subject of difference between the most able judges : Compare the opinion of Green, J. in Whittington v. Christian, 2 Rand. 357. with that of Carr, J. in Green v. Judith, 5 Rand. 4. But, I confess that I am upon reflection strongly inclined to think with judge Green, that with the limitations prevailing in our courts, “ the party whose evidence is demurred to, has all the benefit of the ancient practice, without subjecting the other party to its inconveniences; and no disputed fact is taken from the jury and referred to the court.” There are, it is true, some difficulties, where there is a variety of facts on both sides, the practice in reference to which yet remains to be settled. With those I shall not meddle here.
I remark, next, that, notwithstanding the position that the demurrant must admit upon the record, the facts which the evidence conduces to prove; and notwithstanding the observation of lord chief justice Eyre in Gibson v. Hunter, that the court is to regulate the admissions which are to be made upon the record; yet the demurrer to evidence in that case, set forth, as we do, the evidence at length, and not the facts it was supposed to prove. And though it is true the court decided “that'the examination of witnesses had been conducted so loosely, or the demurrer been so irregularly framed, that there was no manner of certainty .in the state of facts, upon which judgement could be founded,” and moreover declared that the defendant could not compel the plaintiff to join in demurrer, “ unless he distinctly admitted upon the record, every fact and every conclusion which the evidence given for the plaintiff conduced to prove;” yet this rule does not appear to have been rigorously followed in other cases, even in England. For, in Cocksedge v. Fanshaw, Doug. 119. long anteriour to Gibson v. Hunter, the demurrer was framed precisely like our own; as *159 will appear from the note to Gibson v. Hunter, 2 H. Black. See too, 2 Plow. 1. and Tidd’s prac. forms 325. I doubt not, our practice has been taken from that case, decided in the court of king’s bench by Mansfield and Puller. Be this as it may, our reports, from Pendleton’s time to the present day, bear recorded evidence of the uniformity of the practice in Virginia, of inserting the evidence in the demurrer, putting no admissions upon the record, and leaving the inferences from the evidence, to the court, as is now customary in our tribunals. In all our courts (and there are more than two hundred of them) this is the received practice. It would be pregnant with mischief to attempt to change it judicially. On the faith of the decisions of this court, parties litigant have acted, and are perhaps at this moment acting. It is one of those matters of practice which goes to the very right of the parties, and not to form merely? and he who has rested his case upon a demurrer drawn according to the established practice of our courts, may lose his estate through faith in our adjudications, if we should now unexpectedly alter the course of them.
Lastly, I will observe, before I proceed to pronounce on the particular case before us, that I think the expression, “ that the demurrant must admit, or is considered as admitting, every fact which the evidence may conduce to prove,” must not be understood too broadly. The language of this court is more appropriate; “ that the demurrant must be considered as admitting all that could reasonably be inferred by a jury from the evidence given against him.” For evidence may conduce, that is, tend or contribute towards the proof of a fact, which it is very far from establishing, and which could not be fairly inferred from it. Thus, in the present case: the order from Hansbrough to his overseer to shew and deliver the slaves to Thom, is one link, and a very important one, in the chain of proof to establish the fact of a sale by the former to the latter; and, in this sense, it may very truly be said to conduce to prove a sale. But, surely, from that fact alone, no jury or court could be justi *160 fled in inferring a sale, which is a transaction complicated of various facts, such as the transfer of the property by the vendor, and the actual delivery of the possession to, and the payment of a consideration by, the vendee.
What then, is the case under consideration ? It is a case in which, aocording to my conception, nothing can be inferred in favour of the plaintiff, except that Hansbrough had made him a present of the slaves from motives of regard. So strong, indeed, is this evidence—evidence too introduced by the plaintiff himself—that I have not the slightest doubt he went for a gift upon the trial of the cause, and that the judgement of the court proceeded upon the sufficiency of the evidence to establish such gift. On no other principle, can we account for his introducing this sort of evidence, instead of that of agreed price. The circuit court was not apprised of the decision in Durham v. Dunkly, 6 Rand. 135. and it is very possible, that very decision has induced the appellee to shift his battery, and go for a sale, as he now finds he cannot sustain his title as a gift. Be this as it may, there is nothing which, to my mind, can justify the inference that there was a sale. A sale implies a contract, for a valuable consideration. The case, as it is presented, affords no foundation, on which to rest even a violent presumption, that there was a consideration paid, contracted to be paid, or contemplated by the parties. Had there been such a consideration, the evidence would lead us very fairly to infer that we should have heard of it, through the witnesses, from the communicative old man. But his design was to aid his grandson, not to traffic with him. He meant to relieve him by paying his debt, not by shifting his burden. The only instance of his speaking of selling the slaves, occurred some months before ; while all his recent conversations pointed to an act of benevolence from a rich old man to a favourite kinsman. The whole testimony, indeed, conduces’, that is, leads or tends, to prove that a gift was intended and not a sale. I am, therefore, of opinion, that the judgement ought to be reversed. But the opinion of the court is that it be affirmed.